## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JIM H. KELLY, SHERLYN KELLY-THOMPSON, DANILLE L. WILLIAMS AND PAMELA K. LINTON** | **CIVIL ACTION** |
| **VERSUS** | **NO: 06-10914** |
| **CHASE INSURANCE LIFE AND ANNUITY COMPANY** | **SECTION: "S" (3)** |

### ORDER AND REASONS

**IT IS HEREBY ORDERED** that Chase Insurance Life and Annuity Company's motion

for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, is

**GRANTED**.  (Document #15.)

### I. BACKGROUND

Chase Insurance Life and Annuity Company (Chase) issued a 15-year term life insurance

policy in the amount of $204,000 to LaVanner Brown on June 18, 2004, through independent

agent, Ross Elkins.  The policy was issued under the premium rate class of "premier, non-

tobacco."[1]  Brown named her children, Sherlyn K. Thompson, Danille K. Williams, Pamela K.

---

[1]  The other rate classes are preferred, select, and standard.

Lintor, and Jim Kelly, Jr., as beneficiaries.

Brown died as a result of an automobile accident on September 26, 2005.  At the time of her death, Brown held a Ph.D. in Educational Leadership and Research and was a professor and administrator at the University of Southeastern Louisiana, in Hammond, Louisiana, where she was employed for 16 years.  She also operated businesses that provided grant-writing consultation and personal care services for the disabled.  Previously, Brown was elected and served several terms on the Hammond City Council.

Brown's beneficiaries filed a claim for benefits under the Chase policy.  Because the policy was within the two-year period in which the claim was contestable, Chase[2] conducted a routine review of the life insurance claim.  An investigation of medical records revealed that, contrary to the information on the application for insurance, Brown had been treated for high blood pressure and high cholesterol.  On July 25,  2006, Chase underwriters ultimately made the decision to deny the claim because Brown had misrepresented her medical history, causing Chase to undertake an unintended risk by issuing the policy at the premier rate.

Kelly, Kelly-Thompson, Williams, and Linton filed a petition for breach of life insurance contract in the 21st Judicial District Court, Parish of Tangipahoa, State of Louisiana.  Chase removed the case to federal court based on diversity jurisdiction.  Chase filed a motion for summary judgment.

## II. DISCUSSION

---

[2]   Chase had merged with Protective Life by the time the investigation took place.

2

**A.  Legal standard**

Summary judgment is proper when, viewing the evidence in the light most favorable to the non-movant, "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  Amburgey v. Corhart Refractories Corp., 936 F.2d 805, 809 (5th Cir. 1991); Fed. R. Civ. P. 56(c).  If the moving party meets the initial burden of establishing that there is no genuine issue, the burden shifts to the non-moving party to produce evidence of the existence of a genuine issue for trial.  Celotex Corp. v. Catrett, 106 S.Ct. 2548, 2552 (1986).  The nonmovant cannot satisfy the summary judgment burden with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.  Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  If the opposing party bears the burden of proof at trial, the moving party does not have to submit evidentiary documents to properly support its motion, but need only point out the absence of evidence supporting the essential elements of the opposing party's case.  Saunders v. Michelin Tire Corp., 942 F.2d 299, 301 (5th Cir. 1991).

**B.  Material misrepresentation**

Chase contends that the claim for benefits was properly denied because Brown made a material misrepresentation with the intent to deceive and that the false statements materially affected its acceptance of the risk.  La. Rev. Stat. 22:619 sets forth the parameters of the defense:

> B.  In any application for life or health and accident insurance made in writing by the insured, all statements therein made by the insured shall, in the absence of fraud, be deemed representations and not warranties.  The falsity of any such statement shall not bar the right to recovery under the contract unless it materially affected either the acceptance of the risk or the hazard assumed by the insurer.

The burden is on the insurer to prove that 1) the statement is false, 2) the false statement was

made with intent to deceive, and 3) the false statement materially affected the insurer's

acceptance of the risk.  Wohlman v. Paul Revere Life Ins. Co., 980 F.2d 283, 285 (5th Cir. 1992).

"Intent to deceive" may be satisfied by showing "facts and circumstances surrounding the

application process indicating the insured's knowledge of the falsity of the representations made

in the application and [her] recognition of the materiality of [her] misrepresentations or from

circumstances which create a reasonable assumption that the insured recognized the materiality."

Id. at 286.

      The evidence establishes that Brown made false representations on her application for

life insurance.  Brown completed a preliminary application for individual life insurance on May

4, 2004.  She answered "No" to the following question:

> Has the proposed insured: 1) ever received medical advice or treatment for
> diabetes, cancer, heart disease, alcoholism, drug abuse, high blood pressure or any
> condition known to reduce life expectancy, or 2) during the past two years
> engaged in scuba diving, hang gliding, mountain climbing, auto racing, or
> aviation?  (If Yes, preferred rates are unlikely.)

      Brown signed a full application for life insurance on May 26, 2004.  Included in the

application were the following questions:

> 7.  Have you ever had or have you ever been treated for:  chest pain, high blood
> pressure, stroke, diabetes, cancer, a disease or disorder of the heart, lungs,
> digestive or genitourinary systems, or a mental or nervous disorder?
> . . . .
> 11.  In the past five years have you ever been hospitalized or consulted a
> physician?
> . . . .
> 13.  Are you currently taking or have you been advised to take any medication?

Brown answered "No" to questions #7 and #13 and "Yes" to question #11.  Under the section

entitled "Additional Details," Brown explained that she had a routine physical examination with Dr. Laughlin G. Winkler in Hammond, Louisiana, from one to five years earlier and that the results were all normal.  She signed an authorization to release her medical information to the insurance company.

Chase presents the deposition testimony of Dr. Winkler to establish that Brown misrepresented her medical history.  Dr. Winkler testified that Brown became a patient on July 31, 1995, when she visited his office for a routine physical.  On May 22, 1998, Brown saw Dr. Winkler with concerns about her blood pressure because she had experienced a reading of 150/92.  Dr. Winkler ordered blood tests and suggested that Brown follow a low-salt diet to control her blood pressure.  On December 18, 1998, the results of Brown's blood tests showed high cholesterol and triglyceride levels.

Brown's next visit to Dr. Winkler was on March 1, 2001, during which she expressed concern about hypertension.  Her blood pressure was 148/108 with a pulse of 68.  Dr. Winkler discussed a treatment plan, which included blood-pressure medication, baby aspirin, and a low/no salt diet.  On March 7, 2001, laboratory tests were performed.  On March 16, 2001, Dr. Winkler reviewed the results with Brown in an "extensive discussion."  The results showed elevated cholesterol of 273, triglycerides at 92, and an increase in LDL and blood sugar.  Dr. Winkler prescribed Atenolol for blood pressure and Lipitor for high cholesterol and suggested that she adjust her diet.

On April 16, 2001, Dr. Winkler reported that the laboratory tests showed considerable improvement as a result of Brown's use of Lipitor.  Dr. Winkler recommended that Brown

continue the blood pressure medication for chronic hypertension and Lipitor for elevated cholesterol.  Dr. Winkler periodically renewed the prescriptions at a Walgreens Drug Store between April 2001 and July 2004.

On July 9, 2004, Brown returned for an office visit.  Her blood pressure was 140/80, which Dr. Winkler considered to be high.  He recommended that she monitor her blood pressure at home on a daily basis.

Chase also presents evidence that Brown omitted information concerning a visit to the emergency room in 2004.  Dr. Mark Haile testified in his deposition that he treated Brown at the emergency room of North Oaks Hospital on May 19, 2004.  Brown had symptoms of lightheadedness and dizziness and indicated that she was taking Atenolol for high blood pressure.  The first reading of her blood pressure was 150/98.  Her blood tests were normal, and Dr. Haile suggested that she take an extra dose of blood pressure medicine that evening.  Dr. Haile also wrote a prescription for Antivert, an antihistamine used  for patients with symptoms of dizziness.  After Brown was given an opportunity to rest, her blood pressure fell to 132/73, and Dr. Haile discharged her.

The court concludes that Brown made these misrepresentations with the intent to deceive. After years of visits to Dr. Winkler, laboratory tests, prescribed medication, and renewals of those prescriptions, Brown denied any diagnosis or treatment by Dr. Winkler and personnel of North Oaks Hospital.  It is reasonable to assume that Brown responded "No" to the questions concerning her health and her medications because she believed that her treatment for hypertension and elevated cholesterol levels was material to the risk.   Further, the information is

6

material because Chase's decision to issue the insurance policy at the premier premium rate was based on the misrepresentations.

### III. CONCLUSION

There are no disputed issues of material fact that Brown made false statements in the application with actual intent to deceive and that the statements materially affected Chase's acceptance of the risk.  Accordingly, Chase properly denied the claim and rescinded the policy, and it is entitled to judgment as a matter of law.

New Orleans, Louisiana, this  12th day of December, 2007.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**